Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**HUGH N. TAYLOR**
Hugh N. Taylor, P.C.
Auburn, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TRENA MARIE GAGLIARDO, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 76A03-1306-CR-209 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE STEUBEN CIRCUIT COURT
The Honorable Allen N. Wheat, Judge
Cause No. 76C01-0401-FC-119

**April 7, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Trena Marie Gagliardo appeals her conviction for nonsupport of a dependent child as a class C felony. Gagliardo raises two issues which we revise and restate as:

I.  Whether the evidence is sufficient to sustain her conviction; and

II.  Whether she received ineffective assistance of counsel for failing to object to the admission of certain evidence.

We affirm.

### FACTS AND PROCEDURAL HISTORY

Gagliardo and Richard Tritch had a daughter born to their marriage and divorced in 1989. They agreed that Tritch would have custody of the child and that Gagliardo would pay $65 per week of child support through the Steuben County Clerk's Office. Instead Gagliardo made payments directly to Tritch, and he provided her with receipts for the payments. Tritch did not receive any support payments either directly from Gagliardo or through the clerk's office between February 1, 1999, and December 31, 2003.

On January 30, 2004, the State charged Gagliardo with nonsupport of a dependent child as a class C felony. Gagliardo appeared in custody at an initial hearing on September 20, 2011. On February 20, 2013, the court held a jury trial in which facts consistent with the foregoing were presented. At trial, the State presented State's Exhibit 2, a child support arrearage calculation prepared by the Steuben County Clerk's Office and signed by Traci Bruick, the IV-D Administrator, which showed Gagliardo had a child support arrearage in the amount of $16,460 attributable to the time period between February 1, 1999 and December 31, 2003. State's Exhibit 2 was admitted without objection. The State also called Tritch as a witness, and Tritch testified that he did not receive child support payments between February 1, 1999, and December 31, 2003, either

2

directly from Gagliardo or through the clerk's office. Gagliardo testified that in the past she had made support payments directly to Tritch and, during the period between February 1, 1999, and December 31, 2003, she sent between $3,000 and $4,000 directly to him. Gagliardo also testified that she was unemployed for some of the relevant time period, she had quit her job due to migraines caused by the work environment, there was no work available near where she lived in Idaho, and that she and her husband declared bankruptcy which was finalized in 2003. She did not present any exhibits at trial.

The jury found Gagliardo guilty as charged. On May 8, 2013, the court sentenced Gagliardo to four years, including 524 days executed and 936 days suspended. She was credited with 262 days of pre-trial incarceration; thus, the balance of the court's sentence was suspended to probation.

## DISCUSSION

### I.

The first issue is whether the evidence is sufficient to sustain Gagliardo's conviction for nonsupport of a dependent child as a class C felony. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. Jordan v. State, 656 N.E.2d 816, 817 (Ind. 1995), reh'g denied. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. Id. We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Id. The uncorroborated testimony of one witness, even if it is the victim, is sufficient to sustain a conviction. Ferrell v. State, 565 N.E.2d 1070, 1072-1073 (Ind. 1991).

The offense of nonsupport of a dependent child as a class C felony is governed by Ind. Code § 35-46-1-5(a), which provides: "A person who knowingly or intentionally fails to provide support to the person's dependent child commits nonsupport of a child" and "the offense is a Class C felony if the total amount of unpaid support that is due and owing for one (1) or more children is at least fifteen thousand dollars ($15,000)." Thus, in order to convict Gagliardo of nonsupport of a dependent child as a class C felony, the State was required to prove that Gagliardo knowingly or intentionally failed to provide support to her daughter in the amount of at least $15,000. Also, Subsection (d) provides that "[i]t is a defense that the accused person was unable to provide support." Ind. Code § 35-46-1-5(d).

Gagliardo argues that she testified she was unable to work for most of the relevant time period, she had to leave her job due to migraines from the work environment, she drove "one hundred miles (100) each way just looking for work," "[s]he lived in a tiny mining town in Idaho with no employment available," and that she and her husband had declared bankruptcy in 2002. Appellant's Brief at 12-13. She contends that such "evidence of [her] inability to pay her support was undisputed and could lead to only one conclusion." Id. at 14. She also maintains that she presented evidence that she had paid three to four thousand dollars during the time stated in the charging information, and notes that "Tritch testified he did not recall receiving payments between February 1, 1999 and December 31, 2003 . . . but that he had received direct payments in the past directly from her." Id. at 15. Her position is that the three to four thousand dollar payment negates the dollar amount in the charging information.

The State argues that the evidence presented demonstrated that Gagliardo had an obligation to pay $65 per week toward supporting her daughter and that Tritch, who should have received such payments, did not receive support payments between February 1, 1999, and December 31, 2003. The State notes that Gagliardo admitted she had a sizeable arrearage of child support and that "[s]imple mathematics places an arrearage of nonpayment at more than $16,000 for the charged period . . . ." Appellee's Brief at 5. The State further contends that although she claimed to have made a payment of three or four thousand dollars and to have filed bankruptcy and "suffered other financial woes," she did not present documents or other evidence such as cashier's check receipts or bankruptcy filings to support her claims, and that her defense therefore rests "solely on the credibility of her own testimony, nothing more." Id.

The evidence favorable to the verdict reveals that Gagliardo agreed to pay child support in the amount of $65 per week through the Steuben County Clerk's Office. She made payments instead directly to Tritch, and he provided her with receipts for the payments. Tritch did not receive support payments either directly from Gagliardo or through the clerk's office between February 1, 1999, and December 31, 2003 which led to an arrearage of over $16,000. To the extent Gagliardo argues she was unable to pay and presented testimony regarding such inability, the jury heard the testimony and did not find it persuasive. Gagliardo's arguments to the contrary are merely a request that we reweigh the evidence and judge witness credibility, which we cannot do. Jordan, 656 N.E.2d at 817.

Based upon the evidence favorable to the conviction, we conclude that the State presented evidence of probative value from which a reasonable jury could have

5

determined beyond a reasonable doubt that Gagliardo was guilty of nonsupport of a dependent child as a class C felony. See Porter v. State, 935 N.E.2d 1228, 1234-1235 (Ind. Ct. App. 2010) (holding that the State presented sufficient evidence supporting an arrearage of at least $15,000 and that the defendant was guilty of nonsupport of a dependent child as a class C felony).

II.

The next issue is whether Gagliardo received ineffective assistance of counsel for failing to object to the admission of State's Exhibit 2. To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. Ben-Yisrayl v. State, 729 N.E.2d 102, 106 (Ind. 2000) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), reh'g denied), reh'g denied, cert. denied, 534 U.S. 830, 122 S. Ct. 73, 151 L.Ed.2d 38 (2001). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. French v. State, 778 N.E.2d 816, 824 (Ind. 2002). To meet the appropriate test for prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Perez v. State, 748 N.E.2d 853, 854 (Ind. 2001). Failure to satisfy either prong will cause the claim to fail. French, 778 N.E.2d at 824. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. Id.

When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Morgan v. State, 755 N.E.2d 1070, 1072 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." Williams v. State, 771 N.E.2d 70, 73 (Ind. 2002). Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel. Clark v. State, 668 N.E.2d 1206, 1211 (Ind. 1996), reh'g denied, cert. denied, 520 U.S. 1171, 117 S. Ct. 1438 (1997). "Reasonable strategy is not subject to judicial second guesses." Burr v. State, 492 N.E.2d 306, 309 (Ind. 1986).

We observe that Gagliardo is raising a claim of ineffective assistance of counsel on direct appeal. In Lewis v. State, we noted that a post-conviction hearing is normally the preferred forum to adjudicate an ineffectiveness claim. 929 N.E.2d 216, 263 (Ind. Ct. App. 2010) (citing Woods v. State, 701 N.E.2d 1208, 1219 (Ind. 1998), reh'g denied, cert. denied, 528 U.S. 861, 120 S. Ct. 150 (1999)). This is because "[i]n contrast to a direct appeal, which addresses claims of error established in the record of proceedings through trial and judgment, a post-conviction relief proceeding may receive new evidence not previously presented at trial." Jewell v. State, 887 N.E.2d 939, 941 (Ind. 2008) (citing Ind. Post-Conviction Rules 1(1)(a)(4) and 1(5)). "Nevertheless, some claims of ineffective assistance of counsel can be evaluated on the trial record alone, and such claims are resolvable on direct appeal." Lewis, 929 N.E.2d at 263. "Some claims of ineffective assistance of trial counsel concern a decision by trial counsel that is perhaps within the range of acceptable tactical choices counsel might have made, but in the

7

particular instance is claimed to be made due to unacceptable ignorance of the law or some other egregious failure rising to the level of deficient attorney performance." Id. (citation and internal quotation marks omitted). "In those cases, the reasoning of trial counsel is sometimes apparent from the trial record." Id. "When the reasoning of trial counsel is apparent from the record, the claim of ineffective assistance of trial counsel can be appropriately addressed on direct appeal." Id. We also note that where ineffective assistance of counsel is raised on direct appeal, "the appellate resolution of the issue acts as *res judicata* and precludes its relitigation in subsequent post-conviction relief proceedings." Jewell, 887 N.E.2d at 941.

Gagliardo argues that there was no foundation for the admissibility of State's Exhibit 2 when her counsel allowed it to be admitted without objection, "and it was hearsay as the preparer did not testify." Appellant's Brief at 16. She asserts that State's Exhibit 2 was the basis for two elements of the State's case, speaking to both the fact that she did not pay as well as the amount of the arrearage, and that her "counsel's performance in not objecting to the State's Exhibit 2 . . . was deficient for not requiring a foundation for its admission" and that "[a]dditionally, absent Exhibit 2 there would not be a conviction." Id. at 18.

The State contends that Gagliardo fails to meet her "rigorous burden" of proving ineffective assistance by means of the trial record alone and cites to a case from the United States Court of Appeals for the Seventh Circuit which notes that "[w]hen the only record on which a claim of ineffective assistance is based is the trial record, every indulgence will be given to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight," and that accordingly "[i]t

8

is no surprise that such claims almost always fail." Appellee's Brief at 7-8 (quoting U.S. v. Taglia, 922 F.2d 413, 417-418 (7th Cir. 1991), cert. denied, 500 U.S. 927, 111 S. Ct. 2040 (1991)). The State argues that nothing in the record or Gagliardo's argument suggests that the document is anything other than what it claims to be, any foundational deficiency could easily have been remedied by simply calling Traci Bruick as a witness, and the record does not indicate that Bruick was unavailable. The State also maintains that "Exhibit 2 was consistent with and therefore could have corroborated [Gagliardo's] testimony," noting that it merely showed the clerk did not receive payments, that Gagliardo admitted this in her testimony as she stated she made payments directly to Tritch, and that therefore "[c]ompetent defense counsel may well have appreciated the State's introduction of an exhibit which could have corroborated at least part of [her] testimony." Id. at 10.

The entry of State's Exhibit 2 did not prejudice Gagliardo. Gagliardo's contention at trial was that she made a payment of three or four thousand dollars directly to Tritch which would not have shown on the document produced by the Steuben County Clerk's Office. Indeed, State's Exhibit 2 is entirely consistent with Gagliardo's version of her dealings with her ex-husband Tritch. Also, to the extent State's Exhibit 2 noted that Gagliardo's arrearage exceeded $16,000, simple mathematics multiplying $65 by the number of weeks in the time period between February 1, 1999, and December 31, 2003, corroborates the State's version of events.[1] Because Gagliardo was not prejudiced by the

---

[1] The time period encompasses four full years of fifty-two weeks each plus forty-eight additional weeks, for a total of 256 weeks. Gagliardo owed $65 for each of these weeks, which yields an arrearage of $16,640.

9

introduction of State's Exhibit 2, we conclude that she did not receive ineffective assistance of counsel when her counsel did not object to its admission.

## CONCLUSION

For the foregoing reasons, we affirm Gagliardo's conviction for nonsupport of a dependent child as a class C felony.

Affirmed.

VAIDIK, C.J., and NAJAM, J., concur.