## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 13 2019, 9:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Mark Johnson
New Castle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mark Johnson,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Defendant*

November 13, 2019

Court of Appeals Case No.
18A-PC-1929

Appeal from the Marion Superior Court

The Honorable Kurt Eisgruber, Judge

Trial Court Cause No.
49G01-1106-PC-41966

**May, Judge.**

[1] Mark Johnson appeals the denial of his petition for post-conviction relief. He argues he received ineffective assistance of appellate counsel because his appellate counsel: (1) did not argue on direct appeal that Johnson received ineffective assistance of trial counsel; and (2) did not present argument on direct appeal challenging Johnson's habitual offender adjudication. We affirm.

## Facts and Procedural History

[2] The facts underlying Johnson's convictions are set forth in our opinion deciding his direct appeal:

> The evidence most favorable to the convictions is that at around noon on June 12, 2011, A.T. agreed over the phone to go to Johnson's home in Indianapolis. A.T. went to Johnson's home hoping to smoke marijuana with him. Johnson told A.T. after she arrived that he did not have any marijuana but that someone else would bring some to the home at a later time. Meanwhile, the two sat on a couch and discussed each other's children. Johnson smoked crack cocaine and drank beer, while A.T. smoked only cigarettes and did not smoke any crack or drink any alcohol.
>
> At some point, Johnson began taking off his clothes. A.T. then stood up, intending to leave, but Johnson grabbed her arm and threw her back on the couch. A.T. began yelling and telling Johnson to stop. Instead, Johnson pulled down A.T.'s pants, held her arms over her head, and had vaginal intercourse with her while she continued begging him to stop. After a period of time, Johnson stopped having intercourse, and A.T. pulled up her pants and ran out of the house. While driving away, planning on going to a hospital, A.T. saw a parked police car and reported what had happened to the officer.

DNA testing revealed the presence of biological material from A.T. on Johnson's penis and fingers and biological material from Johnson on A.T.'s neck. However, there was no biological material from Johnson recovered from A.T.'s genital area or clothing. Additionally, there was DNA from three unidentified males recovered from the panties A.T. was wearing when she went to the hospital after the rape.

When police questioned Johnson about A.T.'s rape allegation and told him that A.T. had denied smoking crack, Johnson accused her of lying and asked whether A.T. would be tested for drugs. The interviewing officer, Detective Laura Smith, said that A.T.'s blood would be so tested at the hospital. However, this statement was based on Detective Smith's outdated belief that toxicology testing of the victim was standard rape examination protocol when in fact that protocol had been changed and toxicology was no longer performed. Instead, a liquid sample of A.T.'s blood was disposed of, without first being tested for the presence of drugs, after a lab technician placed a sample of the blood on a dry card for DNA testing purposes.

On June 15, 2011, the State charged Johnson with Class B felony rape, Class D felony criminal confinement, and Class A misdemeanor battery. The State later filed an allegation that Johnson was an habitual offender. Before trial, Johnson filed a motion to introduce evidence of the unidentified DNA found in A.T.'s underwear, which the trial court denied. Also before trial, Johnson sought dismissal of the prosecution on the basis that the State had destroyed material evidence, i.e. A.T.'s liquid blood, which Johnson claimed could have proven through toxicology testing that A.T. was under the influence of drugs and/or alcohol at the time of the incident, rendering her less credible. The trial court also denied this motion. On November 3, 2011, after a jury trial, Johnson was found guilty as charged, and he admitted to being an habitual offender. The trial court entered judgments of

conviction on all three guilty findings and sentenced Johnson accordingly.

*Johnson v. State*, 2012 WL 4324448, *slip op*. at 1-2 (Ind. Ct. App. 2012) (footnotes omitted), *trans. denied*.

[3] On direct appeal, Johnson argued his convictions for rape, criminal confinement, and battery violated his right to be free from double jeopardy; the trial court abused its discretion when it denied Johnson's motion to dismiss; and the trial court abused its discretion when it refused to permit Johnson to introduce evidence in violation of the Rape Shield Rule. Our court reversed Johnson's convictions for criminal confinement and battery based on a violation of double jeopardy and affirmed the trial court's denial of Johnson's motion to dismiss and refusal to allow Johnson to present evidence that violated the Rape Shield Rule. *Id*. at 7. Our Indiana Supreme Court denied Johnson's petition for transfer.

[4] On August 21, 2013, Johnson filed a pro se petition for post-conviction relief alleging ineffective assistance of trial counsel and ineffective assistance of appellate counsel. On June 19, 2018, the post-conviction court held an evidentiary hearing. On July 13, 2018, the post-conviction court denied Johnson's petition for post-conviction relief.

# Discussion and Decision

Claims of ineffective assistance of appellate counsel are reviewed using the same standard as claims of ineffective assistance of trial counsel.[1] *Taylor v. State*, 717 N.E.2d 90, 94 (Ind. 1999). These claims generally fall into three categories: (1) denying access to appeal; (2) waiver of issues; and (3) failure to present issues well. *Bieghler v. State*, 690 N.E.2d 188, 193-95 (Ind. 1997), *cert. denied sub nom. Bieghler v. Indiana*, 525 U.S. 1021 (1998). Relief is appropriate only when we are confident we would have ruled differently if counsel had performed adequately. *Id*. at 196.

## Failure to Present Ineffective Assistance of Trial Counsel Argument on Direct Appeal

Johnson argues his appellate counsel was ineffective because she did not raise the issue of ineffective assistance of trial counsel on direct appeal. The errors Johnson claims were made by trial counsel, related to evidence of the victim's prior sexual history that was not admitted because the evidence violated the

---

[1]A successful claim of ineffective assistance of trial counsel must satisfy two components. First, the defendant must show deficient performance - representation that fell below an objective standard of reasonableness involving errors so serious that the defendant did not have the counsel guaranteed by the Sixth Amendment. *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002), *reh'g denied*. Second, the defendant must show prejudice - a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different. *Id*.

Rape Shield Rule, were litigated as part of his direct appeal, and our court affirmed the trial court's refusal to admit such evidence.[2] *Johnson*, *slip op*. at 6.[3]

[7] Further, we note had Johnson's appellate counsel raised the issue on direct appeal, she would have foreclosed Johnson from raising that issue before a post-conviction court. *See Ben-Yisrayl v. State*, 738 N.E.2d 253, 259 (Ind. 2000) (once a petitioner raises a claim of ineffective assistance of counsel on direct appeal, he is precluded from raising ineffective assistance of trial counsel in a petition for post-conviction relief), *reh'g denied*, *cert. denied sub nom. Ben-Yisrayl v. Indiana*, 534 U.S. 1164 (2002). Johnson has not demonstrated he was prejudiced by this decision, as our decision in his direct appeal would not have been affected by an additional argument of ineffective assistance of trial counsel, and the inclusion of that issue in his direct appeal would have been against his interest. *See Jewell v. State,* 887 N.E.2d 939, 942 (Ind. 2008) (presentation of issue of ineffective counsel on direct appeal forecloses the use of "the broader evidentiary opportunities afforded in post-conviction proceedings"); *and see McCary*, 761 N.E.2d at 392 (petitioner must demonstrate prejudice, that is, "a reasonable

---

[2] Johnson also alleges his appellate counsel was ineffective for failing to argue ineffective assistance of trial counsel as part of his direct appeal based on Johnson's allegation that the trial court erred when it adjudicated him a habitual offender. We will address the issue of Johnson's habitual offender adjudication *infra*.

[3] Johnson contends that the "rape shield law did not prohibit use of the forensic laboratory results for his defense." (Br. of Appellant at 16.) Johnson also maintains that the evidence of unidentified DNA being present in panties, pants, vaginal, and genitalia area should have been admitted. (*Id*.) But at trial the expert who performed the DNA testing testified that Johnson's DNA was not found in A.T.'s vaginal swabs, external genital swabs, or in her underwear. (Prior Case Tr. at 434-36.) Thus, the forensic laboratory results were, in fact, used in Johnson's defense, and the other DNA evidence which he contends should have been admitted was both irrelevant and properly excluded under the Rape Shield Rule.

probability . . . that, but for counsel's errors, the result of the proceeding would have been different.").

## Appellate Counsel's Failure to Challenge Habitual Offender Status on Appeal

[8] As part of the underlying case, the State alleged Johnson was a habitual offender based on two prior burglary convictions – one a Class B felony and one a Class C felony. (Prior Case App. Vol. II at 27.) At trial, the State presented evidence of the two prior convictions through relevant Abstracts of Judgment and fingerprint evidence. One of the prior convictions was listed as a Class B felony on the Abstract of Judgment presented as evidence to the trial court, but the Abstract indicated Johnson was sentenced to three years, which was below the minimum sentence for a Class B felony. In addition, the Abstract of Judgment indicates the disposition for Class B felony burglary was "Finding of Guilty Lesser Included." (*Id*. at 79.) Based on this variance, Johnson argues the trial court erred when it adjudicated him a habitual offender and his appellate counsel was ineffective for failing to challenge Johnson's habitual offender adjudication as part of his direct appeal.

[9] During his trial, Johnson's trial counsel argued, regarding this discrepancy:

> [Defense Counsel]: . . . The State has laid out their charging information. It was charged as a B felony thereof conviction on May 25th of 2001. Local rules require that charges be made out with specificity and I would ask the court to hold the State to the four corners of [the] document and looking at the abstract of judgment the Court can see that the sentence is not in line with a

B felony conviction, therefore, the State has not proven beyond a reasonable doubt that Mark Johnson was convicted of a B felony burglary and we'd ask that he be found not guilty of the habitual offender.

(Prior Case Tr. Vol. IV at 755.) In announcing its decision, the trial court stated:

> [Court]: . . . The Court has heard the argument, has heard the evidence of counsel; understands the defense's argument, however, it does reflect that – a conviction of a felony – burglary and I appreciate what you say about the sentence but it is still a felony I believe for purposes of the habitual offender statute.

(*Id.*)

[10] The statute that governed habitual offender adjudications at the time of Johnson's trial stated: "A person is a habitual offender if the . . . court (if the hearing is to the court alone) finds that the state has proved beyond a reasonable doubt that the person had accumulated two (2) prior unrelated felony convictions." Ind. Code § 35-50-2-8(g) (2005). Therefore, the State was required to prove Johnson had two prior unrelated felony convictions. As only felonies carry sentences of more than one year, it is reasonable to infer that the burglary offense in question was a felony, and the State carried its burden. Based thereon, Johnson has not demonstrated his appellate counsel was ineffective for failing to raise the issue of his habitual offender adjudication because that argument would have been unsuccessful. As the argument would have been unsuccessful, we also conclude that Johnson's appellate counsel was

not ineffective for failing to argue on direct appeal that his trial counsel was ineffective regarding trial counsel's handling of the habitual offender issue. *See Bieghler*, 690 N.E.2d at 196 (relief on a claim of ineffective assistance of appellate counsel is successful only when we are convinced the result of the appeal would be different).

# Conclusion

Johnson did not demonstrate his appellate counsel was ineffective because she did not argue that his trial counsel was ineffective or that the trial court erred when it adjudicated him a habitual offender. Accordingly, we affirm the denial of his petition for post-conviction relief.

Affirmed.

Najam, J., and Bailey, J., concur.